UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   COTTONWOOD CORNERS PHASE V, LLC,                    No. 11-11-12663 JA

Debtor.

## MEMORANDUM OPINION

Following a preliminary hearing held April 12, 2012 on the Motion for Relief from Stay filed by Jefferson-Pilot Investments, Inc. ("JPI") and oral argument on legal issues relating to the Chapter 11 plan[1] of Cottonwood Corners Phase V, LLC ("Cottonwood" or "Debtor"), the Court directed the parties to submit briefs on the legal issue of whether the Debtor will be required to pay interest on certain components of JPI's claim in order to satisfy the requirements for confirmation under 11 U.S.C. § 1129(b).  JPI has raised other confirmation issues in its objection to confirmation (*See* Docket No. 131), but this narrow legal issue is the only issue that the Court has determined should be resolved prior to the final hearing on confirmation currently scheduled for May 16 and 17, 2012.[2]

The Debtor commenced its bankruptcy case on June 8, 2011.  The Debtor's Third Modification to Amended Plan of Reorganization Dated October 7, 2011 ("Third Plan Modification") (the Debtor's proposed plan, as modified by the Third Plan Modification, hereafter is called the "Plan") separately calculates the interest arrears accruing from June 3, 2010 through the effective date of the Plan and proposes not to pay interest on this component of JPI's claim.  JPI contends that the Plan's failure to provide for payment of interest on JPI's entire secured claim as of the effective date of the Plan, including the pre-confirmation interest arrears

---

[1]The Court previously denied confirmation of the Debtor's Amended Plan of Reorganization Dated October 7, 2011. *See* Docket No. 110.   Since then, the Debtor filed a third modification to its amended plan on March 3, 2012. *See* Debtor's Third Modification to Amended Plan of Reorganization Dated October 7, 2011 – Docket No. 119.
[2] The final hearing on JPI's Motion for Relief from Stay is scheduled at the same time.

component of the claim, violates the provisions of 11 U.S.C. § 1129(b)(2)(A). The Debtor counters that its plan meets the "fair and equitable" requirements of 11 U.S.C. § 1129(b)(2)(A) under the third, alternative, standard of "indubitable equivalence" found in 11 U.S.C. § 1129(b)(2)(A)(iii).[3] The Debtor asserts that payment of interest on the interest arrears component of JPI's claim would constitute payment of "interest on interest" contrary to the applicable loan documents, and is not required by § 1129(b)(2)(A)(iii).

After consideration of the briefs submitted by the parties in light of the applicable case law, the Court finds that the Debtor is required to include the pre-confirmation interest arrears as part of JPI's secured claim, and to pay interest on the full amount of the claim as of the effective date of the Plan in order to satisfy the requirements of 11 U.S.C. 11 U.S.C. § 1129(b)(2)(A)(iii).[4]

## DISCUSSION

The Plan separately classifies JPI's claim as a secured claim. JPI voted to reject the Plan. Therefore, pursuant to 11 U.S.C. 11 U.S.C. § 1129(a)(8), to confirm the Plan it must satisfy the requirements of 11 U.S.C. 11 U.S.C. § 1129(b) as to JPI's claim. The Debtor's Third Modification calculates JPI's claim in three components: 1) the principal balance ("Principal"), which includes accrued but unpaid interest as of June 2, 2010 (the date of default); 2) cost arrears ("Cost Arrears") which includes all reasonable attorneys' fees incurred by JPI prior to the petition date, plus post-petition attorneys' fees allowed by the Bankruptcy Court, plus all

---

[3] The Court recognizes that satisfaction of one of the three, alternative prongs under 11 U.S.C. § 1129(b)(2)(A) does not necessarily mandate a finding that the plan meets the more general fair and equitable requirement found in 11 U.S.C. § 1129(b)(1). *See, e.g., In re Pacific Lumber Co.,* 584 F.3d 229, 245 (5th Cir. 2009)("Even a plan compliant with these alternative minimum standards is not necessarily fair and equitable.")(citation omitted); *In re Sandy Ridge Dev. Corp.,* 881 F.2d 1346, 1352 (5th Cir. 1989)(acknowledging that technical compliance with § 1129(b)(2)(A) does not assure a finding that a proposed plan is fair and equitable.); *In re Sunflower Racing, Inc.,* 226 B.R. 673, 687 (D.Kan. 1998)("[S]ection 1129(b)(2) sets forth only minimum standards of what is fair and equitable.")(citations omitted).

[4] Because the Court's decision is limited to the narrow issue of whether the Debtor's Plan must provide for payment of interest on the interest arrears, the decision does not address whether other provisions of the Plan satisfy the fair and equitable requirement necessary to confirmation under the cram down provisions of 11 U.S.C. § 1129(b).

reasonable and necessary costs incurred under the terms of the original loan documents from April 2010 through the effective date of the Plan; and 3) interest arrears ("Interest Arrears") which includes interest on the Principal at the rate of 9.86% (the applicable contract default rate of interest) from June 3, 2010 through the effective date of the Plan, late fees in the total amount of $1983.44, and interest on any Cost Arrears at the rate of 9.86% from the date such Cost Arrears are paid by JPI until the effective date of the Plan, less any adequate protection payments that the Debtor pays to JPI prior to the Plan's effective date. *See* Third Plan Modification, ¶¶ a), d), and e). The Debtor proposes to pay post-confirmation interest on the Principal and Cost Arrears at the rate of 7% per annum,[5] but provides that the Interest Arrears will not bear interest. *Id.* at ¶¶ a), b), and c). Instead, the Debtor proposes to pay the Interest Arrears in thirty equal quarterly payments over a period of 7.5 years. *Id.* at ¶ c). This treatment fails to satisfy the requirements of 11 U.S.C. § 1129(b)(2)(A).

### *Fair and Equitable: Indubitable Equivalence and Present Value.*

The question before the Court is whether the provision in the Third Plan Modification that proposes not to pay interest on the Interest Arrears provides JPI with the "indubitable equivalent" of its secured claim under 11 U.S.C. § 1129(b)(2)(A)(iii). JPI asserts that in order to satisfy the "indubitable equivalent" requirement under 11 U.S.C. § 1129(b)(2)(A)(iii), the Debtor must comply with subsection (II) of 11 U.S.C. § 1129(b)(2)(A)(i), which requires the Debtor to compensate JPI for the present value of its secured claim as of the effective date of the Plan. JPI asserts that the Third Plan Modification fails to satisfy this requirement because the Plan, by providing for payment of the Interest Arrears over a 7.5-year period without interest on the

---

[5] The Court previously established the rate of 7% per annum as the appropriate discount rate to be applied to JPI's claim under the Plan as then formulated in order to comply with the requirements of 11 U.S.C. § 1129(b)(2)(A)(i). *See* Memorandum Opinion, p. 33 (Docket No. 109).

-3-

Interest Arrears, does not provide JPI with the present value of the Interest Arrears component of its secured claim.

The Debtor counters that it need only satisfy the requirement of § 1129(b)(2)(A)(i), § 1129(b)(2)(A)(ii) or § 1129(b)(2)(A)(iii) for confirmation of its Plan over the objection of a rejecting class of secured claims. According to the Debtor, this means that if confirmation is sought pursuant to subsection (iii), subsections (i) and (ii) are simply inapplicable. The Debtor argues that regardless of what § 1129(b)(2)(A)(i)(II) requires, the indubitable equivalent standard of § 1129(b)(2)(A)(iii) is satisfied if the secured creditor receives the full benefit of its bargain made *at the inception of the contract*. The Debtor reasons that if the Plan provides for payment of JPI's claim in full with interest in accordance with the applicable loan documents, including interest on the unpaid principal balance accruing after default but before the Plan's effective date at the default rate of interest, JPI will receive the full benefit of its bargain made at the inception of the contract. The Debtor "concedes that 'indubitable equivalence' requires that 'present value' be calculated in determining whether the payout to the creditor provides it with the benefit of its original bargain," but contends that payment of interest in accordance with contract terms satisfies this present value requirement. *See* [Debtor's] Memorandum – Docket No. 137, p 5. The Debtor maintains that if JPI were to receive interest on the Interest Arrears, it would not receive the indubitable equivalent of its claim, but instead would receive a windfall by receiving interest on interest contrary to the original bargain made by the parties.

The Court disagrees with the Debtor's reasoning that JPI would receive the full benefit of its bargain made at the inception of the contract if the Debtor were to pay interest on the outstanding principal balance as provided by the contract between the Debtor and JPI. The Debtor commenced this chapter 11 case on the eve of a foreclosure sale. The Debtor's plan

-4-

proposes to pay the Interest Arrears totaling over $600,000 on a loan in the original principal amount of $3,500,000, over a period of 7.5 years without interest. Under the Plan, JPI is precluded from foreclosing its mortgage so long as the Debtor complies with its obligations under the Plan. The Third Plan Modification itself acknowledges that it seeks to modify the terms of the loan documents.[6] For JPI to receive the full benefit of its bargain made at the inception of the contract, the Debtor could not accumulate interest arrears either pre- or post-confirmation, JPI could accelerate its loan if arrearages accumulated, and upon acceleration JPI could foreclose its mortgage lien. The Plan, by modifying the contract provisions of acceleration and foreclosure based on pre-confirmation defaults to permit payment of Interest Arrears over a period of 7.5 years, modifies the original bargain of the parties. Under the original bargain, JPI would have been compensated for the Interest Arrears outstanding on the date of commencement of this bankruptcy case immediately upon a then impending foreclosure sale of its collateral.

Further, the Court disagrees with the Debtor's assertion that it may satisfy the indubitable equivalent standard of § 1129(b)(2)(A)(iii) by making deferred cash payments to JPI in an amount that is less than what it would otherwise be entitled to receive to compensate it for the risk and delay of repayment on its claim pursuant to § 1129(b)(2)(A)(i)(II). The § 1129(b)(2)(A)(iii) indubitable equivalent standard should not be applied in a vacuum. While the alterative subsections of 1129(b)(2)(A) are written in the disjunctive, so that subsection (iii) "affords a distinct basis for confirming a plan," the three subsections are not exhaustive of the overarching fair and equitable requirement of § 1129(b)(1). *In re Pacific Lumber Co.,* 584 F.3d

---

[6]The Third Plan Modification provides:
> Except as specifically modified by the Modified Plan, all terms of the existing loan documents, mortgages and agreements in place between the debtor and JPI as of the date prior to the first default by the Debtor shall remain in place unchanged and unaltered. Except as modified by the Plan or this Modification, in the event of any post-petition default by the debtor JPI shall be entitled to exercise all remedies it was entitled to exercise pre-bankruptcy.
>
> Third Plan Modification, ¶ a) (emphasis added).

-5-

229, 246 (5th Cir. 2009). "The non-exhaustive nature of the three subsections is inconsistent with treating them as compartmentalized alternatives." *Id.* at 245-246. The Court, therefore, concludes that the indubitable equivalent alternative under subsection (iii) is not satisfied by deferred cash payments that would result in the creditor receiving less money to compensate it for the risk and delay of repayment on its claim than it would otherwise receive under § 1129(b)(2)(A)(i).[7] *Cf. Pacific Lumber,* 584 F.3d at 246 (stating that "Clauses (i) and (ii) explicitly protect repayment to the extent of the secured creditors' collateral value and the time value compensating for the risk and delay of repayment[,]" and reasoning further that '[i]ndubitable equivalent' is . . . no less demanding a standard than its companions."); *In re Griffiths,* 27 B.R. 873, 877 (Bankr. Kan. 1983)(stating that "[t]he Court does not believe §1129(b)(2)(A)(iii) was intended as an alternative to the cash payment requirements of § 1129(b)(2)(A)(i)(II).").[8] Because the indubitable equivalent standard does not contemplate that the Debtor may provide JPI with worse treatment than JPI would be entitled to receive under § 1129(b)(2)(A)(i)(II) to compensate it for the time value of money, the Court will examine

---

[7] In reaching this conclusion, the Court is not suggesting that a debtor would fail to satisfy the indubitable equivalent standard if the plan provided for a combination of deferred cash payments and other consideration that would provide compensation for delay and risk equivalent to the value of the cash payments required by 11 U.S.C. § 1129(b)(2)(A)(i)(II). Further, the Court does not intend to suggest that a debtor can never proceed under the indubitable equivalent standard if the plan proposes a type of treatment covered by subsections (i) or (ii). *Compare River Road Hotel Partners, LLC v. Amalgamated Bank,* 651 F.3d 642, 648 and 652 (7th Cir. 2011), *cert. granted by RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 132 S.Ct. 845, 181 L.Ed.2d 547 (2011)(observing that "[n]othing in the text of Section 1129(b)(2)(A) directly indicates whether subsection (iii) can be used to confirm every type of reorganization plan or only those plans that fall outside the scope of Subsections (i) and (ii)[,]" but rejecting debtor's argument that a plan could qualify for treatment under subsection (iii) even if the proposed treatment would otherwise fall (and fail) under subsections (i) and (ii)) *with In re Philadelphia Newspapers, LLC,* 599 F.3d 298, 305 and 311 (3rd Cir. 2010)(reasoning that, because § 1129(b)(2)(A) "is phrased in the disjunctive . . . . a debtor may proceed under subsection (i), (ii), *or* (iii), and need not satisfy more than one subsection[,]" and concluding that the "when a debtor proceeds under subsection (iii), Congress has provided secured lenders with no right to credit bid at a sale of collateral.").

[8] *See also, In re Swiftco, Inc.,* 1988 WL 143714, at *11 (Bankr.S.D.Tex. Oct. 5, 1988)(observing that "[o]ne method of providing the indubitable equivalent of the return of the collateral is the payment in cash, over time, equivalent to the value of the secured creditor's full claim.").

-6-

whether § 1129(b)(2)(A)(i) would require the Debtor to pay interest on the Interest Arrears after the effective date of the Plan.

Subsection (II) of 11 U.S.C. § 1129(b)(2)(A)(i) provides:

> that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, **as of the effective date of the plan**, of at least the value of such holder's interest in the estate's interest in such property.

11 U.S.C. § 1129(b)(2)(A)(i)(II)(emphasis added).

This subsection contains a present value requirement.[9] "When payment is deferred, 'a creditor receives the 'present value' of its claim only if the total amount of the deferred payments includes the amount of the underlying claim plus an appropriate amount of interest to compensate the creditor for the decreased value of the claim caused by the delayed payments.'" *In re Airadigm Communications, Inc.* 547 F.3d 763, 768-769 (7th Cir. 2008)(quoting *Rake v. Wade,* 508 U.S. 464, 472 n.8, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993)).

"Under 11 U.S.C. §506(b), the holder of an oversecured claim is allowed interest on his claim to the extent of the value of the collateral . . . . [S]uch interest accrues *as part of the allowed claim* from the petition date until the confirmation or effective date of the plan." *Rake v. Wade,* 508 U.S. 464, 471, 113 S.Ct. 2187, 2191, 124 L.Ed.2d 424 (1993) (emphasis added). Because the value of the claim is calculated under 11 U.S.C. § 1129(b)(2)(A)(i)(II) "as of the effective date of the plan," the amount of JPI's claim as of that date would include the Interest Arrears component.

---

[9]*See Sunflower Racing,* 226 B.R. at 685 ("The Bankruptcy Code requires that with respect to a class of secured claims which opposes a plan, the plan must provide that the holders of such claims receive on account of their claims deferred cash payments totaling at least the allowed amount of their claims . . . . [and] further provides that the present value of the deferred cash payments as of the effective date of the plan must total 'at least the value of such holder's interest in the estate's interest in the property.'")(quoting 11 U.S.C. § 1129(b)(2)(A)(i)(II)); *In re Bloomingdale Partners,* 155 B.R. 961, 974 (Bankr.N.D.Ill. 1993)(explaining that under § 1129(b)(2)(A)(i)(II), the "payments under the plan must satisfy two requirements: (1) the simple, arithmetic total of the stream of payments must at least equal the total claim, and (2) those payments must have a present value equal to the value of the collateral.").

In *Rake v. Wade,* the Supreme Court considered in the context of a Chapter 13 case whether the debtors were required under 11 U.S.C. § 1322(b)(5) to pay interest on pre- and post-petition arrears in order to cure a default on an over-secured home mortgage. *Rake v. Wade,* 508 U.S. at 466. The arrears included unpaid interest. *See Wade v. Hannon* 968 F.2d 1036, 1037 (10th Cir. 1992), *aff'd, Rake v. Wade,* 508 U.S. 972, 113 S.Ct. 459, 121 L.Ed.2d 367 (1993). *Wade).* The Supreme Court in *Rake v. Wade* relied on 11 U.S.C. § 1325(a)(5)(B)(i) and (ii), and 11 U.S.C. § 506(b), to reach its conclusion. Both Section 1325(a)(5)(B)(ii) and Section 1129(b)(2)(A)(i)(II) contain a present value requirement with respect to the amount of the secured claim as of the effective date of the plan. Section 1325(a)(5)(B)(ii) requires, with respect to secured claims, that "[t]he value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than allowed amount of the claim." Similarly, 11 U.S.C. § 1129(b)(2)(A)(i)(II) provides "that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan of at least the value of such holder's interest in the estate's interest in such property." Pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii), the Supreme Court determined that the mortgagee was entitled to interest on pre-confirmation arrearages, which constituted a part of the mortgagee's claim as of the effective date of the plan, in order to provide the mortgagee with the present value of its claim. *Rake v. Wade,* 508 U.S. at 472-43.

Further, whether the loan documents provide for interest arrears to be added to principal, or otherwise provide for payment of interest on interest, is not determinative of what is required to satisfy the indubitable equivalent requirement of 11 U.S.C. § 1129(b)(2)(A)(iii). Just as the rate of interest contained in the loan documents is not relevant to the appropriate "discount rate"

to be applied in order to provide the creditor with the present value of its claim, nor does the method of calculating interest in the loan documents dictate what is required to provide the indubitable equivalent of the secured claim. Under *Rake v. Wade,* an over-secured creditor is entitled to "post-confirmation interest on mortgage arrears, irrespective of whether the agreement giving rise to such claim was silent or state law prohibited the same." *In re Alvarez,* 458 B.R. 645, 650-651 (Bankr.D.Puerto Rico 2011); *Wade v. Hannon,* 968 F.2d at 1042 (holding that an over-secured mortgagee "is entitled to postpetition interest on arrearages and other charges even if the mortgage instruments are silent . . . and state law would not require interest to be paid.").

After *Rake v. Wade*, Congress enacted 11 U.S.C. § 1322(e) (providing that "[n]otwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law") for the express purpose of overruling *Rake v. Wade.* The Floor Statements made in connection with the legislation enacting 11 U.S.C. § 1322(e) included the following remark:

> This section will have the effect of overruling the decision of the Supreme Court in *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). In that case, the Court held that the Bankruptcy Code required that interest be paid on mortgage arrearages paid by debtors curing defaults on their mortgages . . . . This had the effect of giving secured creditors interest on interest payments, and interest on the late charges and other fees, even where applicable laws prohibits such interest and even when it was something that was not contemplated by either party in the original transaction.
>
> H.R. 835, 103rd Cong., 2nd Sess. (1994), 140 Cong. Rec. H10,752 (daily ed. October 4, 1994).[10]

---

[10]*See also Alvarez,* 458 B.R. at 651 (stating that "Section 1322(e) was enacted by the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 305, 108 Stat. 4106 (1994) to overrule the Supreme Court's holding in *Rake v. Wade."*).

-9-

Case 11-12663-j11    Doc 147    Filed 05/04/12    Entered 05/04/12 16:17:30    Page 9 of 12

No similar subsection has been enacted as part of Chapter 11. Thus, the reasoning in *Rake v. Wade* remains instructive to the question of whether the Debtor is required by 11 U.S.C. § 1129(b)(2)(A) to pay interest on the Interest Arrears component of JPI's claim. The fact that the loan documents between the Debtor and JPI do not provide for "interest on interest" is an insufficient measure of whether the Plan provides JPI with the present value of its claim. And unless the Plan provides for JPI to receive the present value the total amount of its secured claim as of the effective date of the Plan, including the Interest Arrears component of the claim, the Debtor has failed to provide JPI with the "indubitable equivalent" of the claim.

The tax claim cases JPI cites likewise support the conclusion that interest arrears accumulated up to the effective date of a chapter 11 plan become a part of the secured claim, and that interest must be paid on the entire amount of the secured claim calculated as of the effective date of the plan. *See, e.g., In re Southern States Motor Inns, Inc.,* 709 F.2d 647, 650 (11th Cir. 1983)(construing 11 U.S.C. § 1129(a)(9)(C), acknowledging that tax claimants must be provided with deferred payments equivalent to the present value of their claims, and determining that "the proper method of providing such creditors with the equivalent of the value of their claim as of the effective date of the plan is to charge interest on the claim throughout the payment period.")(citations omitted); *In re Marfin Ready Mix Corp.,* 220 B.R. 148, 164 (Bankr.E.D.N.Y. 1998)(finding that interest on interest may be allowed as part of an over-secured creditor's claim).[11] The fact *Southern States* and *S & P* construe 11 U.S.C. § 1129(a)(9)(C) rather than 11 U.S.C. § 1129(b)(2)(A)(ii)(II) is not a distinguishing factor; the language of these code sections is substantially similar. *See* 11 U.S.C. § 1129(a)(9)(C)("the holder of such claim will receive on

---

[11]*See also, In re S & P, Inc.,* 189 B.R. 159, 172 (Bankr.N.D.Ind. 1995), *order aff'd by S & P v. Pfeifer,* 189 B.R. 173 (N.D. Ind. 1995), *aff'd,* __ Fed.Appx.__, 78 F.3d 587 (7th Cir. 1996)(Table)(reporting that "the majority of bankruptcy courts has determined that when a debtor chooses to defer payment under 1129(a)(9)(C), the only proper method for providing the creditor with an amount equal to the value of its claim as of the effective date of confirmation of the plan is to charge interest on the claim throughout the payment period.")(citations omitted).

account of such claim regular installment payment in cash - - of a total value as of the effective date of the plan, equal to the allowed amount of such claim."); 11 U.S.C. § 1129(b)(2)(A)(ii)(II)("each holder of a claim . . . receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim . . . ); *In re Cornwall Personal Ins. Agency, Inc.,* 308 B.R. 771, 776 (Bankr.N.D.Tex. 2003)(suggesting that the present value analysis for tax claims under §1129(a)(9)(C) is equally applicable to the present value analysis required under § 1129(b)(2)(A)(i)(II) because both statutory sections use the identical phrase: "value, as of the effective date of the plan"); *In re Gen. Dev. Corp.,* 135 B.R. 1008, 1012 n.5 (Bankr.S.D.Fla. 1991)(noting that "courts tend to treat the present value standard in [§ 1129(a)(9) and §1129(b)(2)(A)(i)(II)] as virtually identical.")(citations omitted).

In sum, the appropriate discount rate for calculating the present value of JPI's secured claim must be applied to the total amount of the claim as of the effective date of the Plan. *Cf. Marfin Ready Mix,* 220 B.R. at 157 (explaining that "[a]n oversecured creditor is entitled to receive interest pursuant to § 506(b) only until the effective date of the plan. At that time, the accumulated interest becomes part of the creditor's allowed secured claim and, pursuant to 11 U.S.C. § 1129, the plan must provide for payment to the creditor of at least the present value of such allowed claim.")(citing *United Savings Ass'n of Texas v. Timbers of Inwood Forest,* 484 U.S. 365, 377, 108 S.Ct. 626, 633-34, 98 L.Ed.2d 740 (1988)(remaining citations omitted)). Thus, the Debtor must pay interest on the Interest Arrears as part of JPI's claim to provide JPI with the indubitable equivalent of its claim.

## CONCLUSION

Under the indubitable equivalent prong of 11 U.S.C. § 1129(b)(2)(A), a debtor proposing deferred payments to the creditor must pay the creditor the present value of its secured claim

-11-

calculated as of the effective date of the plan. JPI's secured claim as of the effective date of the Plan includes the Interest Arrears component of its claim; consequently, to provide JPI with the indubitable equivalent of its secured claim the Debtor must apply a present value factor to the entire claim, including the Interest Arrears. Because the Debtor's plan, which proposes that the Interest Arrears will not bear interest and will be paid over a period of 7.5 years, the Court finds that the Plan as currently formulated does not provide JPI with the indubitable equivalent of its secured claim.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:  May 4, 2012

COPY TO:

Daniel J Behles
Moore, Berkson & Gandarilla, P.C.
Attorney for Debtor
P.O. Box 7459
Albuquerque, NM 87194

Faye B. Feinstein
Lauren Natchinson
Quarles & Brady LLP
Attorneys for JPI
300 N. LaSalle Street, Suite 4000
Chicago, IL  60654

William R. Keleher
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Local Counsel for JPI
PO Box 2168
Albuquerque, NM 87103

-12-

Case 11-12663-j11    Doc 147    Filed 05/04/12    Entered 05/04/12 16:17:30 Page 12 of 12